## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| **DATA INTENSITY LLC,** | : | **CASE NO.:** |
| **50 East RiverCenter Boulevard** | : | |
| **Covington, Kentucky 41011** | : | **JUDGE:** |
| | : | |
| **PLAINTIFF,** | : | |
| | : | |
| **VS.** | : | |
| | : | |
| **NATHAN SPERO,** | : | |
| **3 Laurel Hill Drive** | : | |
| **Sandown, New Hampshire 03873** | : | **COMPLAINT** |
| | : | |
| **AND** | : | |
| | : | **DEMAND FOR JURY TRIAL** |
| **JOSHUA SPERO,** | : | |
| **205 Tower Hill Road** | : | |
| **Candia, New Hampshire 03034** | : | |
| | : | |
| **AND** | : | |
| | : | |
| **FREEDOM TECH LLC,** | : | |
| **Attn: Nathan Spero, Statutory Agent** | : | |
| **3 Laurel Hill Drive** | : | |
| **Sandown, New Hampshire 03873** | : | |
| | : | |
| **DEFENDANTS.** | : | |

Comes now Plaintiff, Data Intensity LLC, and for its Complaint against the Defendants, Nathan Spero, Joshua Spero and Freedom Tech LLC, pleads as follows:

## THE PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Data Intensity LLC ("Data Intensity") is a limited liability company formed under the laws of Delaware. It is wholly owned by Non-Party Mman Acquisition Corp., a corporation incorporated under the laws of Delaware with its principal place of business in Delaware. Accordingly, Data Intensity is a Delaware citizen.

1

2.      Upon information and belief, Defendant Nathan Spero ("N. Spero") is an individual who resides at 3 Laurel Hill Drive, Sandown, New Hampshire. N. Spero is domiciled in New Hampshire. Accordingly, N. Spero is a New Hampshire citizen.

3.      Upon information and belief, Defendant Joshua Spero ("J. Spero") is an individual who resides at 205 Tower Hill Road, Candia, New Hampshire. J. Spero is domiciled in New Hampshire. Accordingly, J. Spero is a New Hampshire citizen.

4.      J. Spero and N. Spero are brothers.

5.      Defendant Freedom Tech LLC ("Freedom Tech") is a limited liability company formed under the laws of New Hampshire.  Upon information and belief, its sole members are J. and N. Spero who both reside in New Hampshire. Accordingly, Freedom Tech is a New Hampshire citizen.

6.      This Court has personal jurisdiction over each Defendant because each resides in New Hampshire and will be served with process in this state.

7.      This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332. Data Intensity is a citizen of Delaware and each Defendant is a citizen of New Hampshire. Accordingly, Data Intensity's citizenship is diverse to each Defendant's. Additionally, the amount in controversy for Data Intensity's claims against each Defendant exceeds $75,000.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because the Defendants reside in this judicial district.

## DATA INTENSITY'S BUSINESS AND SUPPLY CHAIN

9.      Data Intensity began doing business in 2001.  Data Intensity provides Information Technology Managed Services to companies in the United States, Canada, Mexico, the United Kingdom and Australia.

10.     One of those Information Technology Managed Services is the resale of products and software created by Non-Party Oracle Corporation ("Oracle") and services related to such products and software.  Generally speaking, Oracle is a computer technology/software company that creates and sells database software and technology, cloud engineered systems, and enterprise software products.  Oracle's products and services include applications and infrastructure offerings that are delivered worldwide through a variety of flexible and interoperable Information Technology ("IT") deployment models. These models include on-premise deployments, cloud-based deployments, and hybrid deployments, which is an approach that combines both on-premise and cloud-based deployment.

11.     Data Intensity is an Oracle Platinum Partner, the highest partner designation attainable.  Consequently, Data Intensity is authorized by Oracle to sell Oracle's products and software to Data Intensity's customer base that address enterprise IT environments, and Data Intensity routinely serves companies that use Oracle software, Oracle hardware, and Oracle Cloud solutions to run their business.

12.     Data Intensity sells and provides three types of solutions to its customer base: (1) IT Managed Services, whereby Data Intensity is responsible for running their customer's IT infrastructure and Oracle applications 365 days per year; (2) Professional Services, whereby Data Intensity provides project-based services primarily to optimize and upgrade their customers' Oracle technical environments; and (3) Oracle License Solutions whereby Data Intensity advises their customers on optimizing their spend on Oracle software, hardware and Cloud services (collectively "Core Service Offerings").

13.     In the normal course of any one of Data Intensity's Core Service Offerings, and particularly in the Oracle License Solutions, Data Intensity finds opportunities to sell a

comprehensive suite of Oracle products. This includes: (A) Software including Oracle Database, Java, Linux, and MySQL; (B) Oracle Hardware including Oracle Engineered Systems branded as Oracle Exadata; (C) Oracle On-Premise Applications including Oracle E-Business Suite, Hyperion, Peoplesoft, JD Edwards and Customer Relations Management ("CRM"); and (D) Oracle Cloud-based Applications including Oracle Enterprise Resource Planning ("ERP"), Oracle Enterprise Performance Management ("EPM"), Oracle Supply Chain Management ("SCM"), Oracle Human Capital Management ("HCM") and Oracle Customer Experience ("CX") (collectively "Oracle Products").

14.    Data Intensity has continuously sold Oracle Products since its inception in 2001. For example, between January 2018 through August of 2021 alone, Data Intensity has, across its global customer base, sold more than $65,000,000 of Oracle Products.

15.    Data Intensity also markets itself as an expert in Oracle License Solutions and is recognized worldwide as a preeminent expert to help Oracle powered companies optimize their Oracle license spend and stay compliant with Oracle licensing rules. Since inception, Data Intensity has saved its customers' more than $100,000,000 in Oracle software license spend:



CUSTOMER LOGIN

DATA INTENSITY    SOLUTIONS   SERVICES   TECHNOLOGIES   PARTNERS   CUSTOMER HUB   ABOUT

**CHALLENGES OF MANAGING LICENSES**

As technology deployment choices increase, the complexity of managing software licenses increases the risk to your business. When migrating applications to the cloud, the primary business challenge is how to leverage licensed software assets in a services-based consumption model.

Getting this right ensures a smooth transition to cloud services while maximizing existing software investments. Managing the complexity of the Oracle license estate requires a clear understanding of your current application footprint aligned with a methodical plan to convert those assets for an optimal return on investment.

**SOLUTIONS FOR SOFTWARE LICENSES**

With over two decades of experience, Data Intensity combines a life-cycle software license assessment and management methodology with proprietary tools to illuminate the actual position of your Oracle license estate.

We'll show you what software assets you are entitled to, what applications you are using, and where you can retire or repurpose them to maximize your investment. Whether you need a one-time software asset baseline engagement or annual managed services, Data Intensity will review your processes for deploying and retiring software licenses and make recommendations to eliminate waste. You'll know where all your Oracle license vulnerabilities are and which applications add value to your business. Data Intensity can help you understand your current licensing position with Oracle, mitigate license compliance risk, and lower your licensing costs. We offer:

⊙ Cloud-Readiness Assessment

⊙ Oracle Baseline Discovery Analysis

⊙ Op-Ex Optimization and Reduction Analysis

⊙ Oracle License Audit Preparation Analysis

⊙ Enterprise License Position (ELP) Managed Services



**BENEFITS OF ORACLE LICENSE SOLUTIONS**

Data Intensity analyzes your current Oracle license estate to illuminate your risk, identify improvements, and discover opportunities to negotiate transactions on your behalf.

*Screenshot from www.dataintensity.com/solutions/oracle-license-solutions/*
*(Taken September 16, 2021)*

16.     Data Intensity's customer relationships, customer leads, and customer lists are kept confidential and are crucial and material to the company's success.

17.     Data Intensity also relies on its marketing, personnel, client, corporate, financial, technical, and computer information, as well as documents its employees create within the scope of their employment which are kept confidential (collectively, "Confidential Information").

18.     Data Intensity protects its Confidential Information through non-disclosure, non-solicitation, and non-competition restrictive covenants which are required as a condition of employment.

19.     For many years, Non-Party Tech Data Corporation ("Tech Data") has been one of Data Intensity's important industry partners. Tech Data serves as a distributor of Oracle Products sold by Data Intensity.

20.     Another of Data Intensity's important industry partners is with Non-Party NET(net), Inc. ("NET(net)"). NET(net) helps their customers drive the maximum value out of their future information technology spend.  For example, NET(net) is often retained by an Oracle-powered enterprise to help find an Oracle partner most well suited to provide IT-managed services, IT professional services or a software, hardware, or cloud resale service. NET(net) provides a pipeline of potential customers to Data Intensity for sale of Oracle products.

21.     Data Intensity's supply chain leverages relationships with NET(net) and Tech Data. In a prototypical sale, NET(net) will channel potential customers to Data Intensity who will sell customers Oracle products. Tech Data then distributes the Oracle products to the end user.

## DATA INTENSITY EMPLOYS J. AND N. SPERO

22.     On December 22, 2017, Data Intensity provided an offer of employment letter to J. Spero ("J. Spero's Agreement"). In exchange for and as a condition of his employment with Data

Intensity, J. Spero's Agreement contained various restrictive covenants. A fair and accurate copy of J. Spero's Agreement is attached as Exhibit A.

23.     J. Spero agreed to "neither keep, disclose, nor use any Confidential Information, or copies of Confidential Information, whether for [his] own purposes or on behalf of any other person or entity, at any time, except as required in the normal and proper course of [his] duties for [Data Intensity] or by applicable law." *See* Ex. A, p. 1. J. Spero further agreed that this non-disclosure agreement "will continue to apply after [his] employment terminate[d], regardless of the reason for such termination." *Id.* at p. 2.

24.     J. Spero further agreed that "during [his] employment with Data Intensity, and for a period of one (1) year after [he] cease[d] working for [Data Intensity] for any reason, [he] w[ould] not . . . solicit or directly or indirectly service or obtain business from any Customers of Data Intensity or any of its affiliates (a) with whom [he] had contact as a result of [his] job duties with Data Intensity, and/or (b) about whom [he] reviewed or obtained Confidential Information while employed by Data Intensity." *Id.*

25.     J. Spero further agreed that "during [his] employment with Data Intensity, and for one (1) year thereafter, [he] w[ould] not, directly or indirectly, compete or undertake any planning to compete with Data Intensity or any of its affiliates, whether as an owner, partner, investor, independent contractor, employee, or otherwise." *Id.*

26.     These reasonable restrictive covenants were negotiated between sophisticated parties at arms-length.

27.     J. Spero agreed that the above restrictions were "necessary for the reasonable and proper protection of Data Intensity and its affiliates," and "that the durational term of the[se] restrictions w[ould] be tolled, and w[ould] not run, during any period of time in which [he] [was]

in breach of [his] obligations, in order that Data Intensity and its affiliates may have the full protection of the restrictions to which [he] ha[s] agreed." *Id.* at p. 3.

28.    J. Spero agreed that if he breached any of the above restrictive covenants, "Data Intensity, in addition to any other remedies available to it, will be entitled to . . . an award of its reasonable attorneys' fees incurred in enforcing its rights" under the J. Spero Agreement. *Id.*

29.    In exchange for his agreement to these promises, J. Spero was hired as Data Intensity's Regional Sales Director – Northeast. J. Spero: (i) was paid a starting salary in excess of $100,000; (ii) participated in Data Intensity's sales commission plan; (iii) was paid a non-recoverable draw of $24,000; (iv) participated in Data Intensity's 401(k) program and health, dental, life, and disability insurance plans; and (v) provided three weeks' paid vacation annually. J. Spero took advantage of these benefits to which he was entitled.

30.    J. Spero signed J. Spero's Agreement on January 9, 2018 and began employment on or about January 15, 2018.

31.    In his role as the Regional Sales Director, J. Spero was required to and did sell Oracle Products.  J. Spero's original territory encompassed the northeastern portion of the United States.

32.    On July 1, 2019, J. Spero was promoted to Vice President of Sales – North America. This promotion included a substantial increase to his base salary.  In this new role, he was wholly responsible for sales quota attainment within North America which primarily included the sale of Oracle Products to Data Intensity's customers. He reported directly to Data Intensity's CEO & President, and all account sales operations employees eventually reported to J. Spero. In total, J. Spero was responsible for some 218 North American customers and oversaw a total revenue

stream of approximately $45,000,000, nearly all of which was generated by the sale of Oracle Products.

33.    J. Spero was also entitled to commission payments on sales that he made. From October of 2019 through the date of his termination, J. Spero collected at least $631,805 in commission payments in addition to his base salary and related benefits.

34.    On March 19, 2018, Data Intensity provided an offer of employment letter to N. Spero ("N. Spero's Agreement"). N. Spero's Agreement contained various restrictive covenants in exchange for his employment with Data Intensity, and related benefits. A fair and accurate copy of N. Spero's Agreement is attached as Exhibit B.

35.    N. Spero's Agreement is nearly identical in all material respects to J. Spero's Agreement and included the same non-solicitation, non-competition, and non-disclosure restrictive covenants and fee-shifting provision. These reasonable restrictive covenants were negotiated between sophisticated parties at arms-length.

36.    In exchange for his employment, N. Spero was entitled to a non-recoverable draw of $35,000 to be paid in the first four months of his employment. The remaining terms of J. Spero's Agreement detailed above are identical to N. Spero's Agreement.

37.    N. Spero took advantage of all benefits to which he was entitled.

38.    N. Spero signed N. Spero's Agreement on May 14, 2018 and began employment on or about July 9, 2018.

39.    N. Spero was employed as Southeast Regional Sales Director.  In this role, he was responsible for selling software products to Data Intensity customers, which primarily included the sale of Oracle Products.  N. Spero oversaw customer accounts located in the Southeast of the United States.

40.     On or about the 3rd Quarter 2019, N Spero became Sales Director East Region of the United States. In that territory, N. Spero oversaw all customer accounts located in the Eastern area of the United States.

41.     N. Spero was also entitled to commission payments on sales that he made, including those generated from the sale of Oracle Products. From October of 2019 through the date of his termination, N. Spero collected at least $385,984 in commission payments in addition to his base salary and related benefits, nearly all of which was generated by the sale of Oracle Products.

42.     Through their employment with Data Intensity and in reliance on the restrictive covenants, Data Intensity provided J. and N. Spero Confidential Information of Data Intensity including, but not limited to, Data Intensity's customer lists and proprietary customer information, financial information, marketing information, strategic planning information, and strategic partner/product information.

43.     Due to their positions in Data Intensity's salesforce, J. and N. Spero had access to lists of Data Intensity's existing customers. Data Intensity maintains the confidentiality of its customer names and lists, and these names and lists fall within the definition of Confidential Information.

44.     As part of their usual and customary duties, J. and N. Spero received customers and requests for quotes directly from NET(net) and developed further organic NET(net) customer relationships for Data Intensity's benefit because NET(net) is a Data Intensity partner. Within their purview, J. and N. Spero were the gatekeepers to Data Intensity's Net(net) customer sales; a significant portion of Data Intensity's United States and North American Net(net) customers passed through them.

45.     J. and N. Spero also built strong relationships with Data Intensity's customers and strategic partners by way of their employment with Data Intensity.  For example, J. and N. Spero had contact with Customers M and S.[1] At the time, Data Intensity had an existing economic relationship with Customers M and S.

### J. AND N. SPERO FORM FREEDOM TECH AND COMPETE AGAINST DATA INTENSITY WHILE STILL EMPLOYED THERE

46.     On October 8, 2019, J. and N. Spero filed articles of formation for Freedom Tech with the New Hampshire Secretary of State. According to its formation documents, Freedom Tech is a member-managed LLC and its principal purpose is professional, scientific, and technical services and other computer related services. A fair and accurate copy of Freedom Tech's Certificate of Formation is attached as Exhibit C.

47.     J. and N. Spero are listed as Freedom Tech's sole principal members. N. Spero is Freedom Tech's registered agent for service of process. *See* Ex. C.

48.     Freedom Tech filed annual reports for 2020 and 2021, both of which were electronically signed by N. Spero.

49.     According to Freedom Tech's website, Freedom Tech sells Oracle Products and is an Oracle Sell Partner, an industry term reflecting that Freedom Tech is entitled to sell certain Oracle Products.

50.     According to Freedom Tech's website, Freedom Tech is a Value Added Reseller ("VAR") of Oracle CRM software. As its "Mission" states:

---

[1] These customer names are pseudonyms for two actual customers' names. Data Intensity holds customer names confidentially. Counsel for Defendants, with whom counsel for Data Intensity has been in contact, have been notified as to each customer's true name corresponding to its pseudonym. Data Intensity will file a notice of each customer's name under seal, with the Court's permission, if necessary for motion practice or later filings.

> # Our Mission
>
> Freedom Tech is a value-added reseller (VAR) of enterprise level software, hardware, and cloud solutions, but more importantly, we're a good business invested in great causes.
>
> We founded  Freedom Tech on the idea that by leveraging several years of experience negotiating hundreds of transactions with the world's top technology vendors, we could earn an honest living, while giving back to those who fight to protect us.  Originally, we planned for all donations to go to active service members, retired veterans, and families of those who have fallen.

*Screenshot from* [*www.FreedomTech.com/Mission-2*](www.FreedomTech.com/Mission-2) *(Taken September 15, 2021)*[2]

J. and N. Spero's employment with Data Intensity contributed to their "several years of experience negotiating hundreds of transactions with the world's top technology vendors."

51.    According to Freedom Tech's website, Freedom Tech sells Oracle E-Business Suite ("EBS") Applications, Oracle Cloud Infrastructure ("OCI"), Oracle's JD Edwards Program, and "PeopleSoft" and "Hyperion," the very same Oracle Products which Data Intensity sells:

---

[2] It bears noting that Freedom Tech purports to support charitable causes as mentioned in this screenshot. While charity is a noble effort that Data Intensity supports, Freedom Tech's method of purportedly contributing to charity – by improperly diverting customer sales from Data Intensity in violation of common law and contractual duties – is the focus of this action.



*Screenshot from www.FreedomTech.com/Solutions (Taken September 15, 2021)*

52.    Freedom Tech's website and advertising materials rely extensively on drawing from J. and N. Spero's experience with Data Intensity. For example, the Freedom Tech website states:



*Screenshot from www.FreedomTech.com/Solutions (Taken September 15, 2021)*

J. and N. Spero's employment with Data Intensity contributed to their experience and purported consummation of "[m]ore than 200 transactions," "sav[ing]" as much money as advertised, and accumulation of "20 years of experience negotiating with Oracle."

53.    On information and belief, Freedom Tech serves customers in North America, and has solicited and sold Oracle Products to Data Intensity's customers.

54.    Accordingly, Freedom Tech relies on experience and Confidential Information J. and N. Spero acquired at Data Intensity, targets the exact same customer base in the same territories in which Data Intensity operates, and sells the same Oracle Products as Data Intensity.

55.    Therefore, Freedom Tech was and is a direct competitor of Data Intensity.

56.    While employed by Data Intensity, J. Spero began using an email account "JSpero@FreedomTech.com."

57.    While employed by Data Intensity, N. Spero began using an email account "NSpero@FreedomTech.com."

58.    On information and belief, while still employed by Data Intensity and after, J. and N. Spero used their Freedom Tech emails to set up sales presentations with various existing Data Intensity customers and potential Data Intensity customers who would have otherwise purchased Oracle Products from Data Intensity. Accordingly, J. and N. Spero diverted Data Intensity's existing and potential customers away from Data Intensity and to Freedom Tech while still employed by Data Intensity, as well as after their employment, all in violation of their respective duties of loyalty and their restrictive covenants.

59.    On information and belief, J. and N. Spero, while still employed by Data Intensity, further used their Freedom Tech emails to lay the foundation for Freedom Tech's competing business by directly engaging with NET(net) thereby potentially diverting customers from NET(net) to Freedom Tech instead of Data Intensity.

60.     On information and belief, J. and N. Spero, while still employed by Data Intensity, used their Freedom Tech emails to lay the foundation for Freedom Tech's competing business by setting up their Oracle Products supply chain with Tech Data, a Data Intensity Partner.

61.     For example, on December 11, 2019, N. Spero accepted an invitation from a NET(net) employee from his Freedom Tech email address, not his Data Intensity address despite his ongoing employment by Data Intensity. On information and belief, the ensuing conversation related to Freedom Tech's business, not Data Intensity's.

62.     Further, on May 29, 2020, an individual from Tech Data, while emailing individuals at Data Intensity related to a sales opportunity, emailed J. Spero at his Freedom Tech address instead of his Data Intensity address. On information and belief, this is because J. Spero had previously communicated with that individual from Tech Data concerning Oracle sales on behalf of Freedom Tech while still employed by Data Intensity.

63.     Further, on July 31 and November 30, 2020, N. Spero acquired two price quotes from Tech Data to sell certain Oracle Products to Customer M on Freedom Tech's behalf. Then, N. Spero solicited sales from Customer M on behalf of Freedom Tech. The quote and solicitation culminated in two successful sales totaling nearly $1,000,000 of Oracle Product licenses. As a consequence, Data Intensity lost sales to Customer M for the same Oracle Product licenses.  At that time, Customer M was, and still is, a customer of Data Intensity.

64.     On March 12, 2021, N. Spero acquired a price quote from Tech Data to sell certain Oracle Products and IT services to Customer S on Freedom Tech's behalf. On information and belief, Freedom Tech later consummated the sale of Oracle Products to Customer S in an amount exceeding $200,000. As a consequence, Data Intensity lost sales to Customer S for the same Oracle Product licenses.  At that time, Customer S was, and still is, a customer of Data Intensity.

65.     On information and belief, J. Spero solicited similar sales from other Data Intensity customers, and Freedom Tech has solicited and successfully interfered in other relationships between Data Intensity and its customers.

66.     On information and belief, J. and N. Spero remain in possession of Data Intensity's Confidential Information and are using that information to unfairly compete against Data Intensity and solicit Data Intensity's customers on behalf of Freedom Tech.

## J. AND N. SPERO RESIGN FROM DATA INTENSITY AFTER POSITIONING FREEDOM TECH TO UNFAIRLY COMPETE

67.     N. Spero tendered his resignation from Data Intensity on May 6, 2020. His final day of work was May 15, 2020. His final paycheck was provided to him on May 22, 2020.

68.     When Data Intensity's CEO & President asked J. Spero where N. Spero intended to work, J. Spero stated that N. Spero was joining Amazon Web Services ("AWS"). J. Spero's representation that N. Spero was only working for AWS was intentionally misleading and deceptive to cover J. and N. Speros' tracks and withhold J. and N. Speros' development and use of Freedom Tech while they were still employees and fiduciaries of Data Intensity and immediately after the cessation of their respective employment with Data Intensity.

69.     J. Spero additionally stated that N. Spero was not joining or working for a competitor of Data Intensity.  J. Spero's representation that N. Spero was not joining or working for a competitor was a lie.  While AWS does not compete against Data Intensity, Freedom Tech does, and N. Spero – with J. Spero – had already formed, diverted Data Intensity's customers to, and would continue to work for Freedom Tech. J. Spero remained employed by Data Intensity at the time of this conversation.

70.     On July 19, 2021, Data Intensity terminated J. Spero's employment.

71.     Data Intensity terminated J. Spero in part because he failed to meet his Vice President Sales North America sales quota for the previous two years. On information and belief, J. Spero failed to meet his sales quota because he diverted Data Intensity's customers to Freedom Tech.

72.     J. Spero's final paycheck was provided to him on July 30, 2021.

73.     Upon J. Spero's termination, J. Spero executed a separation agreement relieving him of his non-competition restrictive covenant. The separation agreement, however, did not disturb the remaining terms in J. Spero's Agreement and affirmatively represented that the non-solicitation and non-disclosure covenants specifically remained in place. The separation agreement additionally did not release J. Spero from then-existing causes of action or breaches of his non-competition restrictive covenant during his employment with Data Intensity.[3]

74.     Upon information and belief, J. and N. Spero continue to operate Freedom Tech in violation of their restrictive covenants and in unfair competition against Data Intensity.

### COUNT I
### Breach of the Duty of Loyalty –
### Against J. Spero

75.     Data Intensity incorporates the foregoing allegations as if fully restated herein.

76.     J. Spero held a position of trust and confidence at Data Intensity during his employment by virtue of his status as a Regional Sales Director for Data Intensity's Northeast region and eventual Vice President of Sales for North America. Accordingly, J. Spero owed Data Intensity a duty of loyalty including not to compete against, misappropriate a business opportunity of, self-deal, use Confidential Information of, or solicit clients of Data Intensity for his competing business from Data Intensity during his employment.

---

[3] Data Intensity does not seek to rescind the Separation Agreement or J. Spero's releases of certain causes of action contained therein.

77.    J. Spero breached his duty of loyalty while employed by Data Intensity by: (i) launching Freedom Tech in direct competition with Data Intensity; (ii) laying the foundation for Freedom Tech using commercial channels derived from Data Intensity's business model and Confidential Information; and (iii) on information and belief, soliciting Data Intensity customers and strategic partners and ultimately securing sales to those customers of Oracle Products on behalf of Freedom Tech, diverting them from Data Intensity.

78.    J. Spero's breach of his duty of loyalty caused harm to Data Intensity when Data Intensity, within their reasonable and legal expectation of his loyalty, paid his salary, commissions, and benefits.

79.    As a result of J. Spero's breaches of his duty of loyalty, Data Intensity suffered harm in an amount exceeding $75,000.

80.    J. Spero's intentional breaches of duty were committed with malice or hatred against Data Intensity as evidenced by his clear diversion of customers from Data Intensity while: (i) collecting compensation and benefits; (ii) forming Freedom Tech while still employed by Data Intensity; (iii) concealing his competitive employment with Freedom Tech during his employment at Data Intensity in an effort to cover Freedom Tech's operation from discovery; and (iv) lying to Data Intensity concerning his brother's competitive employment with Freedom Tech in a further effort to cover Freedom Tech's operation from discovery. Accordingly, Data Intensity is entitled to enhanced compensatory damages on this claim.

81.    Data Intensity's right to operate free from its employees violating their duties of loyalty to Data Intensity and J. Spero's obligation to refrain from competitive employment and directing customers from Data Intensity to his own company while employed by Data Intensity are so clearly defined and established that Data Intensity should have been free to enjoy them

absent litigation. Accordingly, Data Intensity is entitled to recover its costs and attorneys' fees it incurs as a result of prosecuting this action on this claim.

### COUNT II
### Breach of the Duty of Loyalty –
### Against N. Spero

82.     Data Intensity incorporates the foregoing allegations as if fully restated herein.

83.     N. Spero held a position of trust and confidence at Data Intensity during his employment by virtue of his status as Southeast Regional Director and subsequently as Sales Director East Region for Data Intensity. Accordingly, N. Spero owed Data Intensity a duty of loyalty including not to compete against, misappropriate a business opportunity of, self-deal use Confidential Information of, or solicit clients of Data Intensity for his competing business during his employment.

84.     N. Spero breached his duty of loyalty while still employed by Data Intensity by: (i) launching Freedom Tech in direct competition with Data Intensity; (ii) laying the foundation for Freedom Tech using commercial channels derived from Data Intensity's business model and Confidential Information; and (iii) soliciting Data Intensity's customers and strategic partners and ultimately securing sales to those customers of Oracle Products on behalf of Freedom Tech, diverting them from Data Intensity.

85.     N. Spero's breaches of his duty of loyalty caused harm to Data Intensity when Data Intensity, within their reasonable and legal expectation of loyalty, paid his salary, commissions, and benefits.

86.     As a result of N. Spero's breaches of his duty of loyalty, Data Intensity suffered harm in an amount exceeding $75,000.

87.    N. Spero's intentional breaches of duty were committed with malice or hatred against Data Intensity as evidenced by his clear diversion of customers from Data Intensity while: (i) collecting compensation and benefits; (ii) forming Freedom Tech while still employed by Data Intensity; (iii) concealing his competitive employment with Freedom Tech during his employment at Data Intensity in an effort to cover Freedom Tech's operation from discovery; and (iv) diverting sales away from Data Intensity to Freedom Tech. Accordingly, Data Intensity is entitled to enhanced compensatory damages on this claim.

88.    Data Intensity's right to operate free from its employees violating their duties of loyalty to Data Intensity and N. Spero's obligations to refrain from competitive employment and directing customers from Data Intensity to his own company while still employed by Data Intensity are so clearly defined and established that Data Intensity should have been free to enjoy them absent litigation. Accordingly, Data Intensity is entitled to recover its costs and attorneys' fees it incurs as a result of prosecuting this action on this claim.

## COUNT III
### Breach of Contract –
### Against J. Spero

89.    Data Intensity incorporates the foregoing allegations as if fully restated herein.

90.    J. Spero's Agreement is a valid and enforceable contract.

91.    As a condition of J. Spero's employment, J. Spero agreed not to use Data Intensity's Confidential Information during or after his employment for his own or anyone else's purposes.

92.    J. Spero breached that term of the J. Spero Agreement when he used Data Intensity's Confidential Information for his own competitive purposes to: (i) assist Freedom Tech in launching and acquiring customers; and (ii) divert Data Intensity's customers from Data Intensity to Freedom Tech.

93.     As a condition of J. Spero's employment, J. Spero agreed not to solicit any of Data Intensity's customers with whom he had contact or about whom he acquired Confidential Information as a result of his employment with Data Intensity either during the term of his employment or for one year after his employment ceased.

94.     On information and belief, J. Spero breached that term of the J. Spero Agreement when he solicited and acquired sales of Data Intensity customers as an agent of Freedom Tech resulting from his pre-resignation communications and partnership with Tech Data.

95.     As a condition of J. Spero's employment, J. Spero agreed not to directly or indirectly compete or undertake any planning to compete with Data Intensity or any of its affiliates, whether as an owner, partner, investor, independent contractor, employee or otherwise. J. Spero's separation agreement did not relieve him of his non-competition obligations during his employment with Data Intensity and did not release any claims Data Intensity had against him at the time of his termination.

96.     J. Spero breached that term of the J. Spero Agreement when he founded and operated Freedom Tech during his employment with Data Intensity, unfairly competed against Data Intensity, solicited customers and strategic partners of Data Intensity, and used Data Intensity's Confidential Information for the benefit of Freedom Tech.

97.     As a consequence of J. Spero's multiple breaches of contract, Data Intensity suffered pecuniary and other economic harm resulting from: (i) lost customers; (ii) diverted sales; and (iii) payment of J. Spero's salary, compensation, and benefits.

98.     J. Spero's breaches of the J. Spero Agreement caused harm to Data Intensity in an amount exceeding $75,000.

99.     J. Spero agreed that the durational terms of the restrictions contained in the J. Spero Agreement would be tolled during any period of time in which he was in breach of his obligations, in order that Data Intensity and its affiliates may have the full protection of the restrictions to which he agreed.

100.    As a consequence of J. Spero's multiple breaches of contract, Data Intensity never received its bargained-for exchange represented by the restrictive covenants to which J. Spero was bound. Accordingly, Data Intensity is entitled to contractual and equitable tolling of the restrictions contained in the J. Spero Agreement to run from one year from the date of J. Spero's compliance. Because J. Spero was in violation of the restrictive covenants contained in the J. Spero Agreement before his termination from Data Intensity, that date of compliance has not even yet begun.

101.    Data Intensity's right to operate free from its employees violating their contractual obligations to Data Intensity by using Data Intensity's Confidential Information for clearly competitive purposes is so clearly defined and established that Data Intensity should have been free to enjoy that right absent litigation. Accordingly, Data Intensity is entitled to recover its costs and attorneys' fees it incurs as a result of prosecuting this action on this claim.

102.    J. Spero agreed that Data Intensity would be entitled to an award of its attorneys' fees it incurred as a consequence of enforcing its rights in the restrictive covenants within the J. Spero Agreement. Accordingly, Data Intensity is entitled to recover its reasonable costs and attorneys' fees in prosecuting this claim.

<u>**COUNT IV**</u>
<u>**Breach of Contract –**</u>
<u>**Against N. Spero**</u>

103.    Data Intensity incorporates the foregoing allegations as if fully restated herein.

104.    N. Spero's Agreement is a valid and enforceable contract.

105.    As a condition of N. Spero's employment, N. Spero agreed not to use Data Intensity's Confidential Information during or after his employment for his own or anyone else's purposes.

106.    N. Spero breached that term of the N. Spero Agreement when he used Data Intensity's Confidential Information: (i) for his own competitive purposes; (ii) to assist Freedom Tech in launching and acquiring customers; and (iii) to divert Data Intensity's customers from Data Intensity to Freedom Tech.

107.    As a condition of N. Spero's employment, N. Spero agreed not to solicit any of Data Intensity's customers either with whom he had contact or about whom he acquired Confidential Information as a result of his employment with Data Intensity, either during the term of his employment or for one year after his employment ceased.

108.    N. Spero breached that term of the N. Spero Agreement when, while subject to the restrictive covenants, he: (i) sold Oracle Products to Customers M and S; and (ii) continued to engage existing Data Intensity customers through Data Tech and NET(net) under his Freedom Tech email alias.

109.    As a condition of N. Spero's employment, N. Spero agreed not to directly or indirectly compete or undertake any planning to compete with Data Intensity or any of its affiliates, whether as an owner, partner, investor, independent contractor, employee or otherwise.

110.    N. Spero breached that term of the N. Spero Agreement when he founded and operated Freedom Tech during and after his employment with Data Intensity, unfairly competed against Data Intensity, solicited customers and strategic partners of Data Intensity, and used Data Intensity's Confidential Information for the benefit of Freedom Tech.

111.    As a consequence of N. Spero's multiple breaches of contract, Data Intensity suffered pecuniary and other economic harm resulting from: (i) lost customers; (ii) diverted sales; (iii) payment of N. Spero's salary, compensation, and benefits.

112.    N. Spero's breaches of the N. Spero Agreement caused harm to Data Intensity in an amount exceeding $75,000.

113.    N. Spero agreed that the durational terms of the restrictions contained in the N. Spero Agreement would be tolled during any period of time in which he was in breach of his obligations, in order that Data Intensity and its affiliates may have the full protection of the restrictions to which he agreed.

114.    As a consequence of N. Spero's multiple breaches of contract, Data Intensity never received its bargained-for exchange represented by the restrictive covenants to which N. Spero was bound. Accordingly, Data Intensity is entitled to contractual and equitable tolling of the restrictions contained in the N. Spero Agreement to run from one year from the date of N. Spero's compliance. Because N. Spero was in violation of the restrictive covenants contained in the N. Spero Agreement before his resignation from Data Intensity, that date of compliance has not even yet begun.

115.    Data Intensity's right to operate free from its employees violating their contractual obligations to Data Intensity by using Data Intensity's Confidential Information for clearly competitive purposes is so clearly defined and established that Data Intensity should have been free to enjoy that right absent litigation. Accordingly, Data Intensity is entitled to recover its costs and attorneys' fees it incurs as a result of prosecuting this action on this claim.

116.    N. Spero agreed that Data Intensity would be entitled to an award of its attorneys' fees it incurred as a consequence of enforcing its rights in the restrictive covenants within the N.

Spero Agreement. Accordingly, Data Intensity is entitled to recover its reasonable costs and attorneys' fees in prosecuting this claim.

**COUNT V**
**Tortious Interference with Existing and Prospective Economic Relationships –**
**Against All Defendants**

117.     Data Intensity incorporates the foregoing allegations as if fully restated herein.

118.     Data Intensity has or had an economic relationship with its customers, including but not limited to Customers M and S as well as its prospective or potential customers with whom Data Intensity had contact or made sales overtures.

119.     J. and N. Spero know about Data Intensity's relationship with Customers M and S; Data Intensity's other and prospective customers; and Data Intensity Partners, NET(Net) and Data Tech, through Confidential Information available to them resulting from their employment at Data Intensity.

120.     Freedom Tech knows about Data Intensity's relationship with Customers M and S; Data Intensity's other and prospective customers; and Data Intensity Partners, NET(Net) and Data Tech, by virtue of J. and N. Spero's knowledge as founders and agents of Freedom Tech.

121.     N. Spero intentionally and improperly interfered with Data Intensity's relationship with Customers M and S; Data Intensity's other and prospective customers; and Data Intensity Partners, NET(Net) and Data Tech. N. Spero diverted customer business from Data Intensity and sold Oracle Products to customers, including Customers M and S, to Data Intensity's exclusion.

122.     Freedom Tech, by virtue of N. Spero's actions, intentionally and improperly interfered with Data Intensity's relationship with Customers M and S; Data Intensity's other and prospective customers; and Data Intensity Partners, NET(Net) and Data Tech. Through N. Spero,

Freedom Tech diverted customer business from Data Intensity and sold Oracle Products to customers, including Customers M and S, to Data Intensity's exclusion.

123.    On information and belief, J. Spero intentionally and improperly interfered with Data Intensity's relationship with its existing and prospective customers; and Data Intensity Partners, NET(Net) and Data Tech. On information and belief, J. Spero diverted customer business from Data Intensity and sold Oracle Products to customers to Data Intensity's exclusion.

124.    On information and belief, Freedom Tech, by virtue of J. Spero's actions, intentionally and improperly interfered with Data Intensity's relationship with its existing and prospective customers; and Data Intensity Partners, NET(Net) and Data Tech. On information and belief, through J. Spero, Freedom Tech diverted customer business from Data Intensity and sold Oracle Products to customers to Data Intensity's exclusion.

125.    Data Intensity was damaged as a result of each Defendant's interference by virtue of the lost profits that Data Intensity would have otherwise acquired from its existing Data Intensity Partners and potential customers, including Customers M and S.

126.    Data Intensity suffered damages in excess of $75,000 as a result of J. Spero's interference with Data Intensity's economic relationships.

127.    Data Intensity suffered damages in excess of $75,000 as a result of N. Spero's interference with Data Intensity's economic relationships.

128.    Data Intensity suffered damages in excess of $75,000 as a result of Freedom Tech's interference with Data Intensity's economic relationships.

129.    As a consequence of each Defendant's diversion of Data Intensity's customers, a significant portion of Freedom Tech's revenue and profits was derived from Data Intensity's

customers. Accordingly, Data Intensity is entitled to disgorgement of Freedom Tech's profits from each diverted customer relationship.

130.    Each Defendant's intentional interferences with Data Intensity's economic relationships were committed with malice or hatred against Data Intensity as evidenced by solicitation and sale of Oracle Products to Customers M and S, both of which were existing Data Intensity customers; and by leveraging and intentionally representing that J. and N. Spero's experience at Data Intensity puts them at a market advantage on Freedom Tech's website, further intentionally diverting potential customers away from Data Intensity and to Freedom Tech. Accordingly, Data Intensity is entitled to enhanced compensatory damages on this claim.

131.    Data Intensity's right to operate free from its illicit competitors targeting Data Intensity's customers for diversion by means of intentional, malicious conduct is so clearly defined and established that Data Intensity should have been free to enjoy that right absent litigation. Accordingly, Data Intensity is entitled to recover its costs and attorneys' fees it incurs as a result of prosecuting this action on this claim.

### COUNT VI
### Unfair Competition in Violation of RSA § 358-A:1 *et seq.* –
### Against All Defendants

132.    Data Intensity incorporates the foregoing allegations as if fully restated herein.

133.    Each defendant engaged in practices which constitute unfair competition in the conduct of trade or commerce.

134.    Data Intensity protected itself from unfair competition by requiring J. and N. Spero to enter into restrictive covenants as a condition of their employment. On information and belief, and as evidenced by their forming Freedom Tech while still employed by Data Intensity, neither

J. nor N. Spero intended to honor their restrictive covenants after leaving Data Intensity's employment.

135.    Following N. Spero's resignation, J. Spero's misrepresentation that N. Spero was not competing against Data Intensity constituted an ongoing effort to avoid Data Intensity's discovery of Freedom Tech or J. and N. Speros' involvement in Freedom Tech.

136.    Freedom Tech, through J. and N. Spero's knowledge of Data Intensity's Confidential Information, improperly and unfairly targets Data Intensity's existing and potential customers, interferes with Data Intensity's business relationships, and interferes with Data Intensity's goodwill with its clients and its industry partners, NET(net) and Data Tech. No legitimate competitor against Data Intensity would demonstrate the rascality that Freedom Tech demonstrated by targeting Data Intensity's existing customers, Customers M and S, and further existing and prospective customers by leveraging Data Intensity's Confidential Information.

137.    The actions by J. and N. Spero and Freedom Tech through J. and N. Spero, together and individually, were at a level of rascality, deceptiveness, and dishonesty that would raise the eyebrow of someone inured to the rough and tumble world of commerce.

138.    The actions by Defendants constitute unfair competition pursuant to RSA § 358-A:1 *et seq*. and specifically in violation of RSA § 358-A:2.

139.    J. Spero's unfair competition caused Data Intensity harm in an amount exceeding $75,000.

140.    N. Spero's unfair competition caused Data Intensity harm in an amount exceeding $75,000.

141.    Freedom Tech's unfair competition caused Data Intensity harm in an amount exceeding $75,000.

142.    On information and belief, each Defendant violated RSA § 358-A:2 willfully or knowingly as evidenced by J. Spero's misrepresentation to Data Intensity to cover Freedom Tech's operation and N. Spero's competition, J. and N. Spero's willful violation of their restrictive covenants while still employed by Data Intensity, and each Defendant's solicitation of Data Intensity's existing and potential customers during and after their employment with Data Intensity for their own benefit. Accordingly, and pursuant to RSA § 358-A:10, Data Intensity shall be awarded not less than double but not more than triple the amount of damages on this claim from each defendant.

143.    Additionally, pursuant to RSA § 358-A:10, Data Intensity is entitled to an award of its costs and reasonable attorneys' fees it incurs as a result of prosecuting this action on this claim.

### JURY TRIAL DEMANDED

144.    Plaintiff Data Intensity LLC hereby requests a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Data Intensity LLC prays this Court enters judgment in its favor and against Defendants and grants the following relief:

a) Compensatory damages in an amount to be proven at trial but exceeding $75,000 as against each Defendant;

b) An order for disgorgement of Defendants' salaries and benefits for the time in which they were in breach of the duty of loyalty;

c) An order for disgorgement of Defendant Freedom Tech LLC's profits for Plaintiff Data Intensity LLC's benefit from each customer it diverted from Plaintiff Data Intensity LLC;

d)  Enhanced compensatory damages in an amount to be proven at trial for Defendants'

    tortious acts taken out of malice or hatred for Plaintiff Data Intensity LLC;

e)  Treble compensatory damages in an amount to be proven at trial against each

    Defendant for their violation of RSA § 358A:1 *et seq*.;

f)  Plaintiff Data Intensity LLC's attorneys' fees, costs, and expenses incurred as a result

    of prosecuting this action by virtue of Defendants' violations of Data Intensity's clearly

    established legal rights, J. and N. Speros' contractual obligations, and as statutorily

    authorized by RSA § 358A:10;

g)  Permanent injunctive relief in the form of equitably tolling the restriction periods in the

    J. Spero and N. Spero Agreements to one year from the date of J. Spero's and N.

    Spero's respective compliance with their terms; and

h)  Any further relief this Court deems just and proper.


                           Respectfully submitted,

                           **DATA INTENSITY LLC**

                           By its attorneys,


Dated: September 29, 2021          /s/ *Christopher Cole*
                           Christopher Cole, Esq., NH Bar No. 8725
                           Ryan P. Lirette, NH Bar No. 19561
                           Sheehan Phinney Bass & Green, P.A.
                           1000 Elm Street, 17th Floor
                           Manchester, NH 03101
                           Phone: (603) 627-8223
                           ccole@sheehan.com
                           rlirette@sheehan.com

                           George B. Musekamp (*Pro Hac Vice pending*)
                           Benjamin G. Sandlin (*Pro Hac Vice pending*)
                           THOMPSON HINE LLP

312 Walnut Street, Suite 2000
Cincinnati, Ohio 45202
Tel:    (513) 352-6700
Fax:    (513) 241-4771
Email:  George.Musekamp@ThompsonHine.com
Email:  Ben.Sandlin@ThompsonHine.com

Counsel for Plaintiff